FILED 11 FEB 22 14:18USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

JOHNNY L. HUGHES,

        Plaintiff,

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

        Defendant.

CV-10-6003-MA

OPINION AND ORDER

RICHARD F. MCGINTY
McGinty & Belcher
P.O. Box 12806
Salem, OR 97301
(503) 371-9636

        Attorney for Plaintiff

1 - OPINION AND ORDER

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

FRANCO L. BECIA
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA  98104-7075
(206) 615-2114

            Attorneys for Defendant

MARSH, Judge.

Plaintiff Johnny L. Hughes seeks judicial review of the Commissioner's final decision issued on December 18, 2009, denying his April 11, 2007, application for Supplement Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, and his June 29, 2007, application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 1381-83f (collectively "benefits').

Plaintiff seeks an order from the court that either remands this matter for the immediate payment of benefits or remands it for reconsideration of the evidence by the Commissioner.

For the following reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter with prejudice.

## BACKGROUND

Plaintiff asserts he has been disabled since September 20, 2005, because of pain from herniated discs, arthritis in his neck, and left toe joint deterioration. On October 7, 2009, an administrative law judge (ALJ) held a hearing at which plaintiff, his daughter, and a vocational expert testified. On October 26, 2009, the ALJ issued a decision that plaintiff is not disabled because although he is unable to perform his past relevant work, he is able to perform other work that exists in significant numbers in the national economy. On December 18, 2009, the Appeals Council denied plaintiff's request for review. The ALJ's decision, therefore, was the Commissioner's final decision for purposes of review.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since February 28, 2004.

At Step Two, the ALJ found plaintiff has a severe impairment that is caused by degenerative disc disease of his cervical spine

3 - OPINION AND ORDER

with right-sided radiculopathy, *i.e.,* right shoulder pain).
See 20 C.F.R. §§404.1520(c) and 416.920(c) (an impairment or
combination of impairments is severe if it significantly limits
an individual's physical or mental ability to do basic work
activities).

At Step Three, the ALJ found plaintiff's impairment does
not meet or equal a listed impairment, and Plaintiff has the
residual functional capacity to engage in light work involving
frequent grasping (gross manipulation) and occasional fingering
(fine manipulation), frequent stair climbing, occasional
balancing, stooping, kneeling, crouching, and crawling, and no
exposure to hazards.

At Step Four, the ALJ found plaintiff is unable to perform
his past relevant work as an industrial cleaner and camper
assembler because those jobs involved medium work, or his past
relevant work in a cannery, because that job exposed him to
hazards.

At Step Five, the ALJ found plaintiff is able to perform all
tasks associated with optical bench work, bench assembly/wire
work, and small products assembler, and those job are available
in substantial numbers nationally and in Oregon.

Based on the above findings, the ALJ found plaintiff is not
entitled to benefits.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's final decision if it is based on proper legal standards and the ALJ's findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all the evidence whether it supports or detracts from the Commissioner's final decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The court must uphold the decision, however, even if it concludes that evidence "is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## ISSUES ON REVIEW

The issues are whether the ALJ erred by (1) failing to credit plaintiff's evidence regarding the severity of his impairments; (2) failing to give germane reasons for discounting the lay testimony of plaintiff's daughter, (3) failing to give clear and convincing reasons for not crediting the medical opinion of treating and examining physicians, (4) failing to consider all of plaintiff's functional limitations resulting from his impairments, and (5) failing to evaluate plaintiff's functional limitations caused by Chronic Obstructive Pulmonary Disease (COPD) and chest pain radiculopathy.

6 - OPINION AND ORDER

## EVIDENCE

The evidence is drawn from the October 7, 2009, hearing, plaintiff's two applications for benefits, his work history report, and the medical records included in the Administrative Record.

### Plaintiff's Testimony.

On the date of the hearing, plaintiff was 46 years old. He has a high school diploma.  He was enrolled in special education classes in high school because he had difficulty reading and spelling.  He has three daughters and a son.  His son and two of his daughters live with him.

Plaintiff receives food stamps.  His only income is from the sale of used Mustang car parts he accumulated when he was in the business of buying and selling used cars, and scrap wire that he obtained from construction sites where his nephew works.

### Previous Employment.

Plaintiff worked periodically buying and selling cars from 1985 to 1989 and in various landscaping jobs in 1987 and from 1995 to 2006.

From 1999 to 2003, plaintiff worked for a manufacturer of campers.  His task was to caulk the seams on cubby hole doors. He was ultimately laid off for lack of work.

From August 2004 to September 2005, plaintiff worked sweeping floors and cleaning up garbage at a trailer factory.  He

7 - OPINION AND ORDER

left that job because it exacerbated his arthritis and neck pain.

In his final job from August-September 2007, plaintiff was employed full-time for a food processor on a food conveyor belt "taking stuff out of the products when [they] would go by."

Plaintiff also worked briefly for his brother on various construction projects.  In those jobs, he was required to lift and carry 10-15 lbs as frequently as every 30 minutes.

Since September 2007, plaintiff has sought employment in order to pay his bills even though he is not physically capable of working because of tingling and numbness in his right arm, arthritis, neck and shoulder pain, back spasms, and occasional leg numbness.

Daily Activities.

Plaintiff is able to take care of his personal grooming and hygiene needs.  He drives to and from the grocery store but his son and girl-friend do the shopping.  He also rides public transportation, uses a telephone and telephone directory, and pays his bills.

Plaintiff watches television for an hour or so before his back begins to hurt badly enough to cause him to lay down.  He wears a back strap to ease his pain.

Plaintiff has not used alcohol for 25 years.  He smokes "a little marijuana" at night to help with his "neck problem." His doctor is "working on getting" him a marijuana prescription.

8 - OPINION AND ORDER

Plaintiff's typical day includes getting his son off to school, watching television news, cooking in a microwave oven, and doing minor chores such has taking out the trash and driving to the store. After that, he lays down for a while, eats lunch, visits a handicapped friend, and spends time with his son when he gets home from school. In the evening he and his son sometimes watch a rented movie video before going to bed.

<u>Physical Limitations</u>.

Plaintiff disagrees with the opinion of a state evaluator that he is able to lift 20 lbs occasionally, 10 lbs frequently, and sit, stand, and/or walk for six hours at a time.

He experiences back pain when he stands for more than 30-45 minutes on a hard floor. He is able to stand on a softer floor for up to two hours at a time. When his back hurts, he sits for 30 minutes.

Plaintiff takes Vicodin four times a day to ease his pain, but feels groggy and has difficulty concentrating for up to two hours after taking the medication. He also takes Ibuprofen, which gives him acid reflux up to twice a week for 30 minutes at a time.

Plaintiff's physical activities are limited because his neck hurts whenever he moves or tilts his head. He has shoulder pain that limits his range of motion in his right arm and causes it to ache, weaken, and tingle when he moves it.

Plaintiff has painful back spasms two or three time a week. He occasionally walks sideways to relieve the pain.

Plaintiff also has shortness of breath and wheezing caused by chronic obstructive pulmonary disease (COPD).

Plaintiff has used methamphetamine in the past. He quit using six years ago, relapsed for six months, but, as of the date of the hearing, has not used the drug for two years.

**Lay Witness Testimony**.

Plaintiff's daughter, Honey Marie Hughes, testified that she has observed her father for two-three hours on a daily basis for the past four years. She notices he has severe back and neck pain that limits the length of time he can sit or walk. She described plaintiff as a stubborn man who wants to work but is in too much pain to do so.

**Vocational Expert Testimony**.

A vocational expert testified plaintiff's past relevant work includes a semi-skilled medium-exertion job as a motor home/camper assembler, an unskilled medium-exertion job as an industrial cleaner that plaintiff performed at the light level, and an unskilled light-exertion level job as a cannery worker.

In response to a hypothetical question from the ALJ, the vocational expert testified plaintiff would not be able to perform his past relevant work if it involved more than light exertion, required plaintiff to climb stairs and grasp with his

10 - OPINION AND ORDER

right hand frequently, balance, stoop, kneel, crouch, crawl, and finely manipulate the fingers of his right hand occasionally, and involved concentrated exposure to machinery and tools.

The vocational expert, however, testified plaintiff would be able to perform unskilled, light-exertion-level work such as garment bagger, bench assembler, and rental storage attendant.

**Medical Evidence - Treatment**.

Juliette Power, M.D., Family Practitioner.

In July 2005, Plaintiff complained of a burning, tingling pain sensation running down his shoulder blades to the back of his neck, with numbness of his right arm to his hand, and mild dizziness.

On examination, plaintiff had full range of motion through his shoulders and neck, and slight muscle spasms of bilateral cervical muscles through the midline into plaintiff's mid-thoracic area. When trigger points in his neck are pressed, plaintiff has a tingling sensation from his neck into his shoulders. A sensory examination was normal.

In August 2005, an MRI confirmed a diagnosis of cervical spondylosis at C4-7, moderate to severe right and moderate left neural foraminal narrowing at C4-6, and moderate to severe right and moderate left neural foraminal narrowing at C4-6.

Dr. Power noted plaintiff had chronic obstructive pulmonary disease that was exacerbated by smoking.

11 - OPINION AND ORDER

In September 2005, plaintiff continued to have complete numbness and frequent episodes of weakness in his right arm. Plaintiff was prescribed Vicodin.

In October 2005, Dr. Power diagnosed diffuse severe degenerative joint disease and cervical spondylosis.  She recommended plaintiff not carry more than 15 lbs, "absolutely" not carry any item above shoulder level, and avoid repetitive shoulder movements such as sweeping.

In December 2005, plaintiff requested that Dr. Power ease the workplace modifications she had recommended to allow him to lift heavier weights up to 50 lbs and, thereby, return to work. Dr. Power complied with his request to the extent she stated he could lift 50 lbs up to his waist.  In any event, plaintiff was terminated by his employer.

In January 2006, plaintiff reported his pain medications adequately controlled his pain.

In September 2006, plaintiff maintained good pain control. He aggravated his neck when he returned to work, but Vicodin helped to dull his "constant neck pain."  He had significant weakness in his left arm to the point he could not raise it.

In February 2007, plaintiff's cervical-thoracic stenosis was well-controlled with medication.

In August 2007, plaintiff's COPD was exacerbated after he failed to notice his inhaler was empty of inhalant.

12 - OPINION AND ORDER

In January and February 2008, plaintiff's COPD was again exacerbated.  Plaintiff had failed to get his inhalant medication prescription refilled.

In July 2008, plaintiff "continued to do very well on his "current [chronic] pain regimen."

In February 2009, plaintiff complained of bilateral pain below the knees to the ankles, which occurred whether he was sitting or standing.  Plaintiff stated he "very rarely needed Ibuprofen or Vicodin" for neck pain or stiffness.

In March 2009, plaintiff had a recurrence of neck pain and stiffness, but "Vicodin [was] still making the pain tolerable."

<u>Silverton Hospital</u>.

In December 2005, plaintiff was treated at the Emergency Room for a sharp, stabbing, throbbing pain of moderate severity on the right side of his body that was radiating into his chest. He was diagnosed with right-side musculoskeletal chest wall pain and discharged 90 minutes after his admission.

In October 2007, plaintiff was treated at the Emergency Room for fingertip pain after suffering a mild crushing injury to the fingers on his left hand.  On physical examination, the range of motion in his neck and upper extremities was normal.

In May 2008, plaintiff was treated at the Emergency Room for nausea and vomiting.  On physical examination, the range of motion in his neck and upper extremities was again normal.

Oregon Health Sciences University.

In October 2007, plaintiff's hand injury was reexamined. He had gangrene on two fingers of his left hand. It healed by January 2008.

A neck x-ray showed degenerative disc disease and uncovertebral and facet arthropathy throughout the cervical spine, more severe at C5-6, with a displacement of vertebrae.

**Medical Evidence - Examination.**

Minhao Zhou, M.D.

In June 2007, Dr. Zhou examined plaintiff on behalf of the Commissioner. He diagnosed chronic neck pain with significant evidence of radiculopathy and cervical stenosis.[1]

Dr. Zhou opined plaintiff, on his right side, is limited to lifting and carrying less than 10 lbs occasionally. His ability to reach, handle, and grasp on the right side is also limited. Plaintiff, however, does not have any postural limitations.

**Medical Evidence - Consultations.**

Martin Kehrli, M.D.; Linda Jensen, M.D.

Dr. Kehrli and Dr. Jensen separately reviewed plaintiff's medical records to determine his residual functional capacity. They both opined plaintiff is able to lift 20 lbs occasionally

---

[1] Dr. Zhou also diagnosed plaintiff as having arthritis of the left big toe. Plaintiff does not assert that impairment as a basis for a disability finding and there is no other medical evidence in the record to support such a finding.

14 - OPINION AND ORDER

and 10 lbs frequently, and to stand, walk, or sit for about six hours in an eight-hour workday. Plaintiff has no limitations as to his ability to push or pull.

Dr. Kehrli also opines plaintiff is able to climb ramps, and stairs, balance, kneel, and crouch frequently, and climb ladders, ropes, and scaffolds, stoop, and crawl occasionally. Plaintiff has limited ability to reach overhead, handle, or finger.

Dr. Jensen, however, differs from Dr. Kehrli in that she opines plaintiff should only occasionally balance, kneel, and crouch.

## ANALYSIS

### 1.  Failure to Credit Plaintiff's Testimony.

Plaintiff contends the ALJ failed to give clear and convincing reasons for not crediting his testimony regarding the severity of his physical and psychological impairments. I disagree.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'"  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective

medical evidence of the symptoms or their severity.  Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is not any affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283.  To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

Here, there is no evidence that plaintiff is a malingerer. Moreover, plaintiff produced objective medical evidence that he suffers from cervical spondylosis that could account for the pain and weakness he describes in his neck and shoulders, and numbness he feels in his right arm.  He also testified, however, that his pain was fairly well controlled with pain medication.

The ALJ discredited plaintiff's testimony regarding his inability to work by pointing to a work history that was "inconsistent" with plaintiff's disability claim.  Specifically, the ALJ stated plaintiff worked 15-20 hours a week as a handyman after the alleged onset date of his disability.  The ALJ obtained that information from plaintiff's written disability report, in which plaintiff stated that, after he asserted his disability claim, he "work[ed] odd jobs about 20 hours a week on a good week."  The ALJ also points out that in 2005, Dr. Power released plaintiff to return to work.  The ALJ, however, does not mention that Dr. Power did so only because plaintiff requested her to do so.  Plaintiff was candid in his testimony that he attempted to work because he needed to work.  In this case, on this record, plaintiff's willingness or attempt to work was not probative as to his credibility regarding the severity of his impairments.

The ALJ, however, also found plaintiff's testimony regarding the severity of his impairments was not entirely credible because the medical record reflects that between January 2006 through March 2009, plaintiff repeatedly told Dr. Power his pain was well-controlled by medication.

On this record, I find the ALJ gave clear and convincing reasons for not fully crediting plaintiff's testimony regarding the severity of his neck and shoulder pain.

2.    **Failure to Credit Lay Testimony**.

Plaintiff contends the ALJ failed to give germane reasons for not crediting the lay witness evidence of plaintiff's daughter that plaintiff wanted to work but was in too much pain to do so.  I disagree.

Lay witness evidence as to a claimant's symptoms "is competent evidence that an ALJ must take into account" unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ rejected the daughter's testimony regarding plaintiff's pain level based on Dr. Power's chart notes on several occasions that plaintiff's pain was well-controlled by medication.  On this record, that was a germane reason for not crediting the lay testimony.

3.    **Failure to Credit Treating Physician's Opinion**.

Plaintiff contends the ALJ erred in failing to credit Dr. Power's October 2005 medical opinion that plaintiff should not carry more than 15 lbs over his shoulder or perform work such as sweeping that requires repetitive shoulder movements. Two months later, however, at plaintiff's urging, Dr. Power opined plaintiff would be able to lift 50 lbs up to his waist.

An ALJ may reject the uncontroverted opinion of a treating physician only by stating clear and convincing reasons that are

supported by substantial evidence in the record.  <u>Lester v.
Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)(as amended).  An ALJ
also may disregard the controverted opinion of a treating
physician only by setting forth specific and legitimate reasons
that are supported by substantial evidence in the record.
<u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003).

Here, the ALJ noted that after October 2005, Dr. Power
loosened plaintiff's work restrictions and, as a consequence,
the heavy labor plaintiff often performed while he was being
treated by her was inconsistent with Dr. Power's earlier weight
restrictions.  In addition, as set forth above, the ALJ noted
Dr. Power's 15 lb weight restriction was undermined by
plaintiff's frequent remarks to her over a three year time span
that his neck and shoulder pain was well-controlled with
medication.

On this record, I find the ALJ gave clear and convincing
reasons for not crediting Dr. Power's October 2005 opinion that
plaintiff was limited to carrying 15 pounds or less over his
shoulder.

**4.**   <u>**Failure to Credit Examining Physician's Opinion**</u>.

Plaintiff contends the ALJ did not give sufficient weight to
examining physician Dr. Zhou's opinion that plaintiff is able to
lift or carry less than 10 lbs occasionally and is limited in
reaching, handling, and grasping with his right hand.

"The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "As is the case with the opinion of a treating physician, the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." Id.

The ALJ credited Dr. Zhou's opinion that plaintiff has manipulative limitations in reaching, handling, and grasping on the right side, but rejected his opinion that plaintiff could only lift and carry less than 10 lbs occasionally with his right upper extremity, because that limitation is inconsistent with plaintiff's ongoing work activity.

On this record, and for all the reasons stated above regarding plaintiff's work history, I find the ALJ gave clear and convincing reasons for not fully crediting Dr. Zhou's opinion regarding the extent of plaintiff's limitations.

**5.    Failure to Consider Adequately Plaintiff's COPD and Chest Pain Radiculopathy.**

COPD.

Plaintiff contends the ALJ did not adequately consider his limitations arising from COPD. I disagree. The ALJ found this impairment was non-severe because it was well-controlled by inhalant medication when plaintiff used it. The record supports that finding.

<u>Chest Pain Radiculopathy</u>.

Plaintiff contends the ALJ erred by failing to include any specific functional limitations arising from plaintiff's chest pain radiculopathy, particularly on his left side. I disagree.  The ALJ noted plaintiff's back pain, whether radiculating or not, was adequately controlled with pain medication.  As set forth above, that finding is amply supported by the medical record.

<b><u>CONCLUSION</u></b>

For these reasons, I **AFFIRM** the decision of the Commissioner.  This matter is **DISMISSED** with prejudice.

IT IS SO ORDERED.

DATED this 22 day of February, 2011.

MALCOLM F. MARSH
United States District Judge